# IN THE COURT OF APPEALS OF IOWA

No. 19-0602
Filed June 5, 2019

**IN THE INTEREST OF B.W.,**
**Minor Child,**

**M.W., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Neill A. Kroeger, LeClaire, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

Marsha J. Arnold, Davenport, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and May, JJ. Tabor, J., takes no part.

**MAY, Judge.**

The juvenile court terminated a mother's parental rights to her child, B.W. On appeal, the mother argues (1) termination is not in B.W.'s best interest due to their strong parent-child bond, (2) B.W.'s placement with relatives should preclude termination, and (3) the juvenile court should have established a guardianship rather than terminating her parental rights. We affirm the juvenile court.

## I. Facts and Prior Proceedings

B.W. was born in 2007. Her mother is a single parent.

In August 2017, B.W.'s adult half-brother and his wife contacted the Iowa Department of Human Services (DHS) about B.W.'s welfare. They were concerned because B.W.'s mother left B.W. for roughly seven weeks without a care plan in place.

In January 2018, DHS again received reports regarding the mother's lack of parental supervision. DHS was advised that the mother often left B.W. in the care of others for extended periods of time without access to medical care or financial support. Reporting individuals also expressed concern that the mother was engaged in sex work and abused drugs.

At the request of DHS, the mother submitted to drug testing. She tested positive for methamphetamine but denied any substance use. She contended she tested positive because "she was 'withdrawing from Adderall' after she took unknown pills from a friend that made her feel 'good and alert.'"

On January 18, 2018, the juvenile court issued an order temporarily removing B.W. from the mother's custody. In March 2018, the court adjudicated B.W. as a child in the need of assistance and formally removed B.W. from the

mother's care.  In July 2018, DHS placed B.W. with her adult half-brother and his wife.  B.W. has remained in their physical care since July 31, 2018.

The mother began supervised visitation with B.W.  Initially, it went well.  However, the mother's participation in visitation became unreliable.  For example, on one occasion Family Safety, Risk, and Permanency (FSRP) worker Sherri Zirbes brought B.W. to the mother's apartment for a scheduled visit, but the mother was not home and did not answer her phone when called.  Sherri and B.W. sat in the hallway for forty-five minutes waiting for the mother to arrive home to begin visitation.  The mother also cancelled visitations for various reasons.  On several occasions, she could not be reached by the FSRP worker or family members.  She also continued to test positive for methamphetamine and failed to consistently participate in substance-abuse treatment.

By January 2019, the juvenile court changed its permanency goal from reunification to termination of the mother's parental rights.  In the interest of permanency, B.W. advised the guardian ad litem and a social worker that she wanted her half-brother and his wife to adopt her.  They, in turn, expressed their wish to adopt B.W.

In March 2019, the juvenile court held a termination hearing.  The mother and the FSRP worker testified.  The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d), (f), (i), and (k) (2019).  The mother appealed.[1]  Our supreme court transferred the case to this court.

---

[1] The mother also sent a pro se letter to our supreme court.  For two reasons, we find the letter is not properly before us.  First, we find no authority in the Iowa Rules of Appellate Procedure for pro se supplemental petitions on appeal.  Second, even if we treat the letter

**II. Standard of Review**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014).

**III. Analysis**

We use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. Finally, we must consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

---

as its own petition on appeal, the mother failed to file it within fifteen days of the notice of appeal as required by rule 6.201(1)(b).

Even if the letter were properly before us, however, it would not change the outcome. The letter consists mainly of (1) matters already covered in the petition on appeal; and (2) matters outside the record, which we cannot consider. *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded.").

We have reviewed the mother's claim that her attorney did not provide effective assistance. *See, e.g.*, *In re J.P.B.*, 419 N.W.2d 387, 392 (Iowa 1988) (discussing standards for ineffective-assistance claims in termination proceedings). She cannot prevail on that claim because she "has not demonstrated the result of the proceeding would likely have been different" if her attorney had acted differently. *In re E.R.*, No. 15-1432, 2015 WL 8366603, at *2 (Iowa Ct. App. Dec. 9, 2015).

### A. Grounds for Termination

Our first step is to determine if a ground of termination under section 232.116(1) has been established. *See id.* at 472–73. "The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997).

Here, the juvenile court terminated pursuant to sections 232.116(1)(d), (f), (i), and (k). The mother has not properly challenged any of these statutory grounds.[2] Therefore, we need not address this step. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *In re A.N.B.*, No. 03-1780, 2003 WL 22900904, at *1 (Iowa Ct. App. Dec. 10, 2003) (declining to consider challenge to statutory grounds supporting termination when the parent failed to provide any argument or authority supporting the challenge); *see also P.L.*, 778 N.W.2d at 40 ("Because the [parent] does not [sufficiently] dispute the existence of the grounds under sections 232.116(1)(d), (h), and (i), we do not have to discuss this step.").

---

[2] The mother's petition contains a single-sentence allegation that insufficient evidence supported the termination of her parental rights. She does not support this allegation with argument or authority. She does not point out any particular deficiencies concerning any of the grounds for termination relied on by the juvenile court. Her "general conclusion does not properly frame the issue for our review." *In re E.C.*, No. 14-0754, 2014 WL 3513336, at *2 (Iowa Ct. App. July 16, 2014); *see also In re Det. of West*, No. 11-1545, 2013 WL 988815, at *3 (Iowa Ct. App. Mar. 13, 2013) (citing authorities for the proposition that a "random mention of an issue, without elaboration or supportive authority, is not sufficient to raise an issue for review").

**B. Best-Interest Framework**

Our next step is to consider the best-interest framework set forth in section 232.116(2). *A.S.*, 906 N.W.2d at 473. Section 232.116(2) provides, in relevant part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

S*ee also* Iowa Code § 232.116(2)(a), (b), (c) (identifying factors that may be relevant to the court's best-interest analysis).

Applying this framework here, we conclude termination of the mother's parental rights is in B.W.'s best interest. The mother's conduct throughout the pendency of this case demonstrates she cannot make the necessary changes to provide a safe and secure home for B.W. She tested positive for methamphetamine multiple times, refused to admit to drug usage, and failed to complete substance-abuse treatment despite recommendations to do so. *See In re H.L.*, No. 18-1975, 2019 WL 478903, at *1 (Iowa Ct. App. Feb. 6, 2019) (collecting cases concluding a parent's drug use and failure to obtain treatment weighs in favor of termination of the parent's parental rights). Additionally, when B.W. was initially removed from the home, the mother did not take any responsibility or show any insight into the severity of leaving B.W. without a known plan of when she would return or a way to reach her in an emergency. She continues to fail to appreciate the seriousness of this conduct. We fear she will continue to leave B.W. to her own devices in the future, compromising B.W.'s safety and development.

Moreover, B.W. is now integrated into her half-brother's home. He and his wife wish to adopt B.W. *See* Iowa Code § 232.116(2)(b). While in their care, B.W. changed school districts and integrated into the new school system, established friendships, joined several extracurricular activities, and developed a relationship with her sister-in-law's family. Termination of the mother's parental rights would allow B.W. to continue to thrive in her current environment. *See id.* § 232.116(2)(b)(1). Termination is also in keeping with B.W.'s own wishes. *See id.* § 232.116(2)(b)(2).

The mother argues the juvenile court should have established a guardianship rather than terminating her parental rights. However, "a guardianship is not a legally preferable alternative to termination." *A.S.,* 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Moreover, we see no reason to believe a guardianship would be in B.W.'s best interest. Rather, a guardianship would deny B.W. the permanency she desires and deserves.

## C. Exceptions

Our final step is to consider section 232.116(3), which provides as follows:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> a. A relative has legal custody of the child.
> b. The child is over ten years of age and objects to the termination.
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> d. It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
> e. The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

"[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. If the parent proves an exception, this court *may* conclude termination is inappropriate. *Id.* We are not, however, *required* to reach that conclusion. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Rather, we exercise our discretion, "based on the unique circumstances of each case and the best interests of the child," to determine whether the parent-child relationship should be saved. *Id.* (citation omitted).

Here, the mother makes two arguments relating to section 232.116(3). First, the mother points to B.W.'s placement with her half-brother. But section 232.116(3)(a) only applies when "a relative has *legal* custody of the child." (Emphasis added). While B.W. was in her half-brother's physical care, legal custody remained with DHS. Therefore, section 232.116(3)(a) is inapplicable. *See A.M.*, 843 N.W.2d at 113 (finding DHS's placement of a child with a relative does not constitute legal custody under section 232.116(3)(a)).

The mother also argues section 232.116(3)(c) applies due to the strength of her bond with B.W. We disagree. The mother has failed to show the parent-child bond is so strong that termination would be detrimental to B.W. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs."). No doubt the FSRP notes demonstrate B.W. relished her

time with the mother. Nevertheless, B.W. also indicated she hoped for termination so that her life would have stability.

**IV. Conclusion**

For the reasons stated, we conclude the juvenile court properly terminated the mother's parental rights. We affirm.

**AFFIRMED.**